UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| DAYNE WOODS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.:  3:23-cv-03287-JEH |
| | ) | |
| | ) | |
| JACK CAMPBELL, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**Order**

**I**

**A**

This cause is before the Court on Defendants' motion for summary judgment and on Plaintiff Dayne Woods' motion for leave to file an Amended Complaint. During the relevant time, Plaintiff was a detainee at the Sangamon County Jail (the Jail). Plaintiff is currently an inmate with the Illinois Department of Corrections (IDOC) who is incarcerated at the IDOC's Menard Correctional Center.

Also during the relevant time, Defendant Jack Campbell was the Sangamon County Sheriff. Defendant Larry Beck was the Superintendent of the Jail. Defendants Williams Smith and Aaron Conrad were Correctional lieutenants at the Jail. Finally, Defendants Vivian Brown and Brent Ferro were correctional officers at the Jail.

On September 28, 2023, Plaintiff filed this case under 42 U.S.C. § 1983 alleging that Defendants violated his Constitutional rights when he was a detainee at the Jail. Specifically, Plaintiff alleged that, as of the time of the filing of his

Complaint, he had been a detainee at the Jail for approximately six years. During his time as a detainee at the Jail, Plaintiff contended that he had been subjected to discipline improperly and that his personal property had been withheld from him without receiving a proper hearing first. In addition, Plaintiff claimed that he received excessive punishments while at the Jail and that Defendants instituted and applied the Jail's rules and disciplinary policies in an arbitrary and capricious manner—all to his detriment. Finally, Plaintiff alleged that he has purposefully been misclassified based upon the Jail's unconstitutional policies, thereby resulting in him being placed in a more dangerous and more restrictive housing that he should be.

On January 16, 2024, the Court conducted a merit review of Plaintiff's Complaint that is required by 28 U.S.C. § 1915A and found that Plaintiff's Complaint stated a claim against Defendants for violating his Fourteenth Amendment Due Process rights when he was a detainee at the Jail. Defendant have now moved for summary judgment on Plaintiff's claim against them.

**B**

Before turning to Defendants' motion for summary judgment, the Court must resolve Plaintiff's renewed motion for leave to file an Amended Complaint. The Court had previously denied Plaintiff's attempt to amend his Complaint because he had failed to demonstrate good cause to allow him to amend as required by Federal Rule of Civil Procedure 16(b)(4). D/E 42.

In his renewed motion, Plaintiff argues that good cause exists to allow him to amend his Complaint. Plaintiff states that his proposed Amended Complaint corrects certain dates and correctly identifies individuals who were involved in the deprivation of his Constitutional rights. In addition, Plaintiff argues that he should be allowed to assert an additional ten legal claims (for eleven in total) against Defendants because they are relevant to his initial claim and because

Defendants should have reasonably expected him to have asserted these additional legal claims against them.

Finally, Plaintiff asserts that he has not delayed in seeking to amend his Complaint. Plaintiff chalks up any delay in his attempt to amend to the fact that he is litigating this case *pro se*, his incarceration, his participation in his criminal trial, and the difficulties that he has experiencing obtaining discovery from Defendants. Accordingly, Plaintiff asks the Court for leave to file his proposed Amended Complaint, and he further asks the Court to amend the Scheduling Order so that he may conduct additional discovery on his newly asserted claims.

Plaintiff's motion is denied. "In making a Rule 16(b) good-cause determination, the primary consideration for district courts is the diligence of the party seeking amendment." *Alioto* v. *Town of Lisbon*, 651 F.3d 715, 720 (7th Cir. 2011). Good cause requires a showing of diligence by the party seeking amendment, and the requisite diligence is not established if delay is shown and the movant provides no reason, or no good reason, for the delay. *Trustmark Ins. Co. v. Gen. & Cologne Life Re of Am.*, 424 F.3d 542, 553 (7th Cir. 2005); *Alioto*, 651 F.3d at 719.

Therefore, courts are "entitled to apply the heightened good-cause standard of Rule 16(b)(4) before considering whether the requirements of Rule 15(a)(2) [are] satisfied." *Adams v. City of Indianapolis*, 742 F.3d 720, 734 (7th Cir. 2014) (upholding district court's denial of motion to amend filed six months after the deadline where the plaintiffs had not demonstrated good cause); *Hukic v. Aurora Loan Servs.*, 588 F.3d 420, 432 (7th Cir. 2009) (affirming district court's denial of the plaintiff's motion for leave to file a second amended complaint "late in the game," in part because plaintiff based his request on information available to plaintiff "long before he sought leave to amend"). However, "district judges have broad discretion to deny leave to amend, where there is undue delay, bad faith, dilatory

motive, repeated failure to cure deficiencies, undue prejudice to the defendants, or where the amendment would be futile." *Huon v. Denton,* 841 F.3d 733, 745 (7th Cir. 2016) (internal quotation omitted).

Here, allowing Plaintiff to amend his Complaint to add ten new legal claims against Defendants would unduly prejudice them. Defendants have been defending themselves against Plaintiff's claim against them for nearly two years before Plaintiff sought to amend his Complaint. *Swisher v. Brown*, 2021 WL 3666481, * 1 (S.D. Ind. Aug. 18, 2021) (finding that allowing an amendment would cause undue prejudice to the defendant, who has been defending himself in this case for over two years). If the Court were to allow Plaintiff to amend his Complaint at this late date, the Court would, by necessity, have to re-open discovery to allow the Parties to engage in discovery concerning Plaintiff's new claims. In other words, the Court would be forced to start this case over, which would unduly prejudice Defendants. *Soltys v. Costello*, 520 F.3d 737, 743 (7th Cir. 2008) ("[E]leventh hour additions . . . are bound to produce delays that burden not only the parties to the litigation but also the judicial system and other litigants.") (citation omitted); *Johnson v. Cypress Hill*, 641 F.3d 867, 873 (7th Cir. 2011) ("[Plaintiff's] request to change his claims on the eve of summary judgment is exactly the sort of switcheroo we have counseled against.").

Although he filed a separate motion seeking leave to amend his Complaint, Plaintiff waited until Defendants filed their motion for summary judgment and, then, sought leave to amend as an attempt to defeat Defendants' motion for summary judgment. Plaintiff's attempt to defeat Defendants' motion for summary judgment by amending his Complaint are improper. *Anderson v. Donahoe*, 699 F.3d 989, 998 (7th Cir. 2012) (holding that a plaintiff cannot amend his complaint through arguments in his brief to a motion for summary judgment); *Smith v. Union Pac. R. Co.*, 474 F. App'x 478, 480 (7th Cir. 2012) ("Although [plaintiff] advanced a

new chronology in his response brief, the district court correctly disregarded that chronology because it differs from the account he pleaded, and he may not amend his complaint through the filing of a response brief."). Accordingly, Plaintiff's motion for leave to file an Amended Complaint is denied.

## II

Turning to Defendants' motion for summary judgment, the undisputed facts demonstrate the following.[1] Between September 24, 2021, and May 13, 2022, Plaintiff resided in the Jail's Segregation Unit, but he did not reside there for disciplinary reasons. In fact, between September 24, 2021, and May 13, 2022, Plaintiff was offered non-segregation housing in different cell blocks, but he refused to transfer housing assignments on fifteen (15) occasions.

Between May 13, 2022, and August 19, 2022, Plaintiff did not reside in the Segregation Unit. However, on August 19, 2022, Plaintiff returned to the Segregation Block, where he was placed on investigative status due a search of his cell that revealed that he was (allegedly) in the possession of contraband. Specifically, Plaintiff received disciplinary tickets for possessing contraband including, "Hooch," two lighters, five razor blades, cigarette, tattoo equipment, civilian clothing, consuming alcohol, disruptive behavior, being combative with staff during the shakedown, failing to comply with instructions, assaulting staff,

---

[1] Local Rule 7.1(D)(2)(b)(6) provides that "[a] failure to respond to any numbered fact [contained within a motion for summary judgment] will be deemed an admission of the fact." *Id*. Plaintiff has not properly responded to Defendants' statement of undisputed facts as required by the Court's Local Rule, and therefore, Plaintiff has admitted all of the facts as asserted by Defendants. The Court incorporates those facts herein. *Parra v. Neal*, 614 F.3d 635, 636 (7th Cir. 2010), *as revised* (July 19, 2010) (internal citations omitted) ("At summary judgment, the plaintiffs filed an opposition to the defendants' motion but did not bother to respond to their statement of material facts. The district court thus accepted the defendants' statement of material facts as true. We do as well.").

threatening violence to staff and threating violence to inmates. Plaintiff received notice of each of these disciplinary tickets, which contain narrative of the incident by the reporting officer(s), on August 18, 2022 and August 19, 2022, respectively.

On August 25, 2022, and August 26, 2022, while on investigative status, Plaintiff received three additional disciplinary tickets. However, these three tickets were reduced to minor infractions. On August 25, 2022, and August 26, 2022, Plaintiff received four disciplinary tickets for staging a fight and disruptive acts, for which he received notice of these tickets. On September 23, 2022, after a complete investigation and a review of the totality of the circumstances, Plaintiff was found guilty on the disciplinary tickets, and he received forty-five (45) days in the segregation unit as a punishment. Plaintiff was also given a phone and commissary restriction.

On February 28, 2023, Plaintiff was issued a disciplinary ticket, 23–0416 for possession of contraband. However, Plaintiff did not receive any segregation time for the ticket and was only issued a thirty-day commissary restriction. On July 2, 2023, after a shake down of the cell block and of Plaintiff's cell, the Plaintiff was placed on investigative status. After investigation, Plaintiff was issued a disciplinary ticket and was charged $8.00 for the destruction of Jail property. Plaintiff also received a two-week commissary restriction as discipline. Plaintiff's time on investigative status was given as credit for any segregation time for the disciplinary ticket. On August 23, 2023, Plaintiff was issued a disciplinary ticket for possession of contraband. Plaintiff received a hearing on this disciplinary ticket on August 28, 20230.

Finally, the only discipline issued to Plaintiff after the hearing was a commissary restriction. Plaintiff was not issued any tickets that resulted in segregation time between August 23, 2024, and his transfer to the IDOC on September 25, 2024. Although Plaintiff was issued disciplinary tickets between

August 28, 2023, and September 25, 2024, the only discipline that was imposed was either phone or commissary restrictions. Plaintiff was allowed to order or was provided basic hygiene items and basic necessities at all times while he was on a commissary restriction.

### III

Federal Rule of Civil Procedure 56(a) provides that summary judgment shall be granted if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Ruiz-Rivera v. Moyer*, 70 F.3d 498, 500-01 (7th Cir. 1995). The moving party has the burden of providing proper documentary evidence to show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Once the moving party has met its burden, the opposing party must come forward with specific evidence, not mere allegations or denials of the pleadings, which demonstrates that there is a genuine issue for trial. *Gracia v. Volvo Europa Truck, N.V.*, 112 F.3d 291, 294 (7th Cir. 1997). "[A] party moving for summary judgment can prevail just by showing that the other party has no evidence on an issue on which that party has the burden of proof." *Brazinski v. Amoco Petroleum Additives Co.*, 6 F.3d 1176, 1183 (7th Cir. 1993).

Accordingly, the non-movant cannot rest on the pleadings alone, but must designate specific facts in affidavits, depositions, answers to interrogatories or admissions that establish that there is a genuine triable issue; he must do more than simply show that there is some metaphysical doubt as to the material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 261 (Brennan, J., dissenting) (1986) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)); *Hot Wax, Inc. v. Turtle Wax, Inc.*, 191 F.3d 813, 818 (7th Cir. 1999). Finally, a scintilla of evidence in support of the non-movant's position is not sufficient to oppose

successfully a summary judgment motion; "there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson*, 477 U.S. at 252.

**IV**

**A**

As noted *supra*, Plaintiff was a pretrial detainee during the time relevant to his Complaint. Therefore, Plaintiff's claim against Defendants claim arises under the Fourteenth Amendment's Due Process Clause. *Kingsley v. Hendrickson*, 576 U.S. 389, 396-97 (2015).

Recently, the United States Court of Appeals for the Seventh Circuit has reviewed United States Supreme Court case law and reiterated what a prisoner must show in order to prevail on a claim that his jailers have violated his Due Process Rights. In *Jackson v. Anastasio*, 2025 WL 2437947 (7th Cir. Aug. 25, 2025), the Seventh Circuit opined that "[p]risoners may 'claim the protections of the Due Process Clause. They may not be deprived of life, liberty or property without due process of law.'" *Id* at * 3 (quoting *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). "To proceed on a due process claim, a prisoner must demonstrate: '(1) the deprivation of a liberty interest; and (2) the procedures he was afforded were constitutionally deficient.'" *Id*. (quoting *Lisle v. Welborn*, 933 F.3d 705, 720 (7th Cir. 2019)). "In *Wolff*, the Supreme Court held that a prisoner is entitled to limited procedural protections before he is deprived of his liberty interest in good-time credits as disciplinary measure. *Id*. (citing *Wolff*, 418 U.S. at 556–57)). "The *Wolff* Court also taught that those constitutional safeguards should apply when inmates face disciplinary solitary confinement." *Id*.

"After *Wolff*, two Supreme Court decisions directly addressed whether and when assignment to some form of segregation or solitary confinement could deprive a prisoner of a liberty interest that would trigger due process protections: *Wilkinson v. Austin*, 545 U.S. 209, 125 S.Ct. 2384, 162 L.Ed.2d 174 (2005), and *Sandin*

8

*v. Conner*, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995)." *Id.* "In *Sandin*, the Supreme Court held that thirty days of disciplinary segregation 'did not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest.'" *Id.* (quoting *Sandin*, 515 U.S. at 486)). "In *Wilkinson*, prisoners were assigned to a maximum-security prison, placed in segregated confinement for an indefinite duration, and 'deprived of almost any environmental or sensory stimuli and of almost all human contact.'" *Id.* (quoting *Wilkinson*, 545 U.S. at 214)). "The Supreme Court wrote that although 'any of these conditions standing alone might not be sufficient to create a liberty interest, taken together they impose an atypical and significant hardship within the correctional context.'" *Id.* (quoting *Wilkinson*, 545 U.S. at 224)).

Therefore, "*Sandin* and *Wilkinson* establish that disciplinary segregation *can* trigger due process protections depending on the duration and conditions of segregation." See *Marion v. Columbia Correctional Institution*, 559 F.3d 693, 697 (7th Cir. 2009). In considering such a Due Process claim, courts must analyze "the combined import of the duration of the segregative confinement *and* the conditions endured by the prisoner during that period" to determine whether solitary confinement deprives a prisoner of a liberty interest warranting due process protections." *Id.* A liberty interest may arise "if the length of segregated confinement is substantial and the record reveals that the conditions of confinement are unusually harsh." *Id.* at 697–98; *Ealy v. Watson*, 109 F.4th 958, 964–65 (7th Cir. 2024) (assuming liberty interest implicated by five months in disgusting solitary conditions); *Marion*, 559 F.3d at 698–99 & n.3 (roughly eight months of solitary confinement required remand for factual inquiry into liberty interest; collecting cases remanding where solitary confinement lasted as few as 75 days). In sum, "[w]hen a prisoner is subjected to a lengthy period of

segregation, the duration of that confinement itself may be atypical and significant." *Jackson*, 2025 WL 2437947, at * 6 (internal quotation omitted).

B

Defendants have raised a host of reasons why they are entitled to summary judgment on Plaintiff's Due Process claims against them, but the Court need focus on only two in finding that Defendants are entitled to summary judgment. *First*, Defendants are entitled to summary judgment because they are immune from Plaintiff's claim based upon the doctrine of qualified immunity.

"Qualified immunity protects government officials from civil liability when performing discretionary functions so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Alvardo v. Litscher*, 267 F.3d 648, 652 (7th Cir. 2001) (internal quotation marks and citation omitted).

To overcome a qualified immunity defense, "a plaintiff must show the deprivation of a constitutional right, and must also show that the right was clearly established at the time of the violation." *Walker v. Benjamin*, 293 F.3d 1030, 1037 (7th Cir. 2002) (citing *Alvarado*, 267 F.3d at 652). To show that a right is clearly established, the burden is on the plaintiff to "demonstrate that existing caselaw at the time of the events in question 'placed the statutory or constitutional question beyond debate.'" *Dockery v. Blakcburn*, 911 F.3d 458, 466 (7th Cir. 2018). "A violation is only clearly established where: (1) a closely analogous case establishes that the conduct is unconstitutional; or (2) the violation is so obvious that a reasonable state actor would know that his actions violated the Constitution." *Nur v. Hyatte*, 2025 WL 2718509, * 4 (N.D. Ind. Sept. 22, 2025) (citing *Siebert v. Severino*, 256 F.3d 648, 654-55 (7th Cir. 2001)). "[A] defendant cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he

was violating it." *Plumhoff v. Rickard*, 572 U.S. 765, 778-79 (2014).

The facts involved in the instant case is very similar to those involved in *Jackson* in which the Seventh Circuit found that the defendants were protected from liability based upon the doctrine of qualified immunity because it was not clearly established in March 2020 that housing an inmate in disciplinary segregation for three months in a cell that contained feces and urine on the walls created a protected liberty interest that implicated due process concerns. *Jackson*, 2025 WL 2437947, at * 8. Similarly, Plaintiff has not identified any case law showing that it was clearly established at the time of his disciplinary proceedings in late 2021 and 2022 that housing an inmate in segregation for forty-days (45) days violated the inmate's Due Process rights, especially where the inmate has offered no evidence regarding the conditions in segregation.

In fact, the law in Plaintiff's case is even less "clearly established" than in *Jackson*, because Plaintiff's stay in segregation was either based upon his choice or due to the fact that his disciplinary charges were being investigated. While the Supreme Court concluded in 1995 that an inmate in disciplinary segregation could have a protected liberty interest under certain circumstances, the caselaw in 2020 was unclear whether inmates in discretionary segregation could *ever* have a protected liberty interest. *See Williams*, 849 F.3d Appx. At 157 n. 3 (noting that "some cases suggest that nonpunitive segregation can never implicate a liberty interest," but "more recent cases question that conclusion.").

Moreover, Plaintiff has failed to cite any case law (and the Court could find none) that showed that it was clearly established in late 2021 and in 2022 that telephone restrictions, commissary restrictions, and small monetary fines could constitute a violation of a detainee or inmate's Due Process rights. In his response, Plaintiff alleges that it was clearly established in 2021 that he was possessed Due Process rights to a hearing and that he had a liberty interest that Defendants

violated.

However, the Supreme Court has "repeatedly told courts . . . not to define clearly established law at a high level of generality" and has reversed federal courts in qualified immunity cases where the lower courts "wrongly subject individual officers to liability." *City & County of San Francisco v. Sheehan*, 575 U.S. 600, 611 & n.3 (2015) (internal quotation marks and citation omitted). Plaintiff has only asserted a generalized right to Due Process under the Fourteenth Amendment, which is insufficient to preclude Defendants' assertion of qualified immunity.[2]    Therefore, Defendants are entitled to summary judgment on Plaintiff's Due Process against them because they are immune from that claim based upon the doctrine of qualified immunity.

## C

*Second*, Defendants Sheriff Campbell and Jail Administrator Beck are entitled to summary judgment on Plaintiff's claim against them in their official

---

[2] Plaintiff argues that state laws and state regulations governing the conducts of jail officials in the State of Illinois show that his rights were "clearly established at the time." However, public officials who have been sued for Constitutional violations "do not lose their qualified immunity merely because their conduct violates some statutory or administrative provision." *Davis v. Scherer,* 468 U.S. 183, 194 (1984). Rather, public officials lose their qualified immunity status only if the plaintiff can show the violation of a clearly established Constitutional right. *Id.*; *Kraushaar v. Flanigan,* 45 F.3d 1040, 1049 (7th Cir. 1995) (holding that an officer's failure to follow procedures that are required by state law, but not by the federal Constitution, establishes only a violation of state law); *Case v. Kitsap County Sheriff's Dep't,* 249 F.3d 921, 929 (9th Cir. 2001) (noting that whether an agent's conduct violates internal departmental policy is "simply irrelevant to the question of [his] eligibility for qualified immunity in a suit over the deprivation of a constitutional right") (internal quotation marks omitted); *Herring v. Keenan,* 218 F.3d 1171, 1180 (10th Cir. 2000) (holding that a violation of internal procedures by a probation officer does not constitute violation of a clearly established Constitutional right).

capacities. As noted in the Merit Review Order, in addition to suing them in their individual capacities, Plaintiff has sued Sheriff Campbell and Jail Administrator Beck in their official capacities D/E 7. Plaintiff may only proceed for injunctive or declaratory relief against a defendant in his or her official capacity if he alleges an ongoing Constitutional violation. *Virginia Office for Prot. & Advoc. v. Stewart*, 563 U.S. 247, 254–55 (2011) (citing *Ex parte Young*, 209 U.S. 123 (1908)).

Here, Plaintiff's allegations describe violations of his rights that occurred in the past. In addition, Plaintiff is no longer housed at the Jail. Instead, Plaintiff is now in the IDOC's custody. *Salahuddin v. Goord*, 467 F.3d 263, 272 (2d Cir. 2006) (holding that an inmate's transfer from a correctional facility generally moots claims for declaratory and injunctive relief against officials at that facility). Accordingly, Plaintiff's claims against Sheriff Campbell and Jail Administrator Beck in their official capacities are moot, and they are dismissed.

**IT IS, THEREFORE, ORDERED:**

1.     **Plaintiff's motion to for leave to file an amended complaint [47] is DENIED.**

2.     **Defendants' motion for summary judgment [45] is GRANTED.**

3.     **Accordingly, the Clerk of the Court is directed to enter judgment in all Defendants' favor and against Plaintiff.**

4.     **All other pending motions are denied as moot, and this case is terminated. All deadlines and settings on the Court's calendar are vacated.**

5.     **If he wishes to appeal this judgment, Plaintiff must file a notice of appeal with this Court within thirty (30) days of the entry of judgment. Fed. R. App. P. 4(a)(4).**

6.     **If he wishes to proceed *in forma pauperis* on appeal, Plaintiff's motion for leave to appeal *in forma pauperis* must identify the issues that he will present on appeal to assist the Court in determining whether the appeal is taken**

in good faith. **Fed. R. App. P. 24(a)(1)(c);** *Celske v. Edwards*, **164 F.3d 396, 398 (7th Cir. 1999) (an appellant should be given an opportunity to submit a statement of his grounds for appealing so that the district judge "can make a responsible assessment of the issue of good faith.");** *Walker v. O'Brien*, **216 F.3d 626, 632 (7th Cir. 2000) (providing that a good faith appeal is an appeal that "a reasonable person could suppose . . . has some merit" from a legal perspective).**

7.    **If he chooses to appeal, Plaintiff will be liable for the $605.00 appellate filing fee regardless of the outcome of the appeal.**

*It is so ordered.*

Entered: September 30, 2025

s/Jonathan E. Hawley

U.S. District Judge